616 So.2d 1055 (1993)
John David LOPER, Appellant,
v.
ALLSTATE INSURANCE COMPANY, Appellee.
ALLSTATE INSURANCE COMPANY, Appellant,
v.
John David LOPER, Appellee.
Nos. 91-2003, 91-2433.
District Court of Appeal of Florida, First District.
April 5, 1993.
*1056 John A. Ratzlaff of Trammell & Ratzlaff, Marianna, and Julian Clarkson and Susan L. Turner, Holland & Knight, Tallahassee, for John David Loper.
Thomas R. Thompson and Michael T. Callahan, Callahan & Dobbins, Tallahassee, for Allstate Ins. Co.
Roy D. Wasson, Miami, for amicus curiae Academy of FL Trial Lawyers.
ZEHMER, Judge.
In this action to recover uninsured motorist benefits from Allstate Insurance Company, John David Loper appeals an amended final judgment entered pursuant to a jury verdict. He raises six points on appeal. The first three of the points contend that the trial court committed error in respect to the trial proceedings by: (1) compelling Loper to testify regarding his criminal record; (2) admitting double hearsay testimony concerning a medical procedure suggested to Loper prior to the accident; and (3) granting Allstate's motion for relief from judgment. The remaining three points assert errors regarding the award of attorney's fees in: (4) failing to award a reasonable attorney's fee for all time expended subsequent to Allstate's disputing whether Loper was an insured under the terms of the policy; (5) failing to consider the application of a multiplier to the attorney's fee award; and (6) failing to consider the amount of time a legal assistant expended on his case in determining the amount of the attorney's fees. Allstate cross-appeals, arguing that the trial court erred in awarding attorney's fees to Loper because Allstate did not have sufficient notice that Loper intended to claim entitlement to attorney's fees.
We affirm the issue raised on cross-appeal without discussion. We reverse the damages award, finding error on the first point raised by Loper, and remand for a new trial on damages only. We also reverse the award of attorney's fees for the reasons hereafter stated. Because Loper's remaining points will likely be implicated on retrial, we also consider each of them to provide guidance during further proceedings on remand.
On December 17, 1989, while walking along a roadway to his job as a dispatcher for the Sneads Police Department, Loper was struck from behind by an uninsured motor vehicle. Loper claimed that he was entitled to uninsured motorist benefits pursuant to a policy issued by Allstate to his stepfather, Walter Austria. Allstate denied Loper's claim and he filed this lawsuit. Allstate's answer denied that the policy issued to Walter Austria provided coverage to Loper and asserted by way of an affirmative defense that Loper was not an "insured" within the meaning of the terms of that policy. The court entered judgment for Loper on the jury verdict, but thereafter granted Allstate's motion for relief from judgment and entered an amended judgment that reduced the jury's award of damages for medical expenses.
With this background in mind, we turn to Loper's arguments on appeal.

I.
At trial, Loper claimed that he was entitled to damages for loss of past and future earnings based on his inability to obtain prospective employment as a corrections officer due to the injuries he suffered in the accident. He presented evidence that he had completed the Corrections Officer *1057 School at Chipola Junior College just two weeks before the accident. Testimony by the director of the corrections school demonstrated that Loper was both qualified and employable as a corrections officer but for the injuries received in the accident.
Allstate's counsel undertook to question Loper about his having been charged with burglary and several misdemeanor convictions, arguing that these facts were relevant to rebut Loper's claim that he would have secured employment as a corrections officer. Allstate argued that Loper's criminal record tended to prove that Loper would be disqualified from obtaining such employment because section 943.13(7), Florida Statutes, requires that an applicant for corrections officer be "of good moral character." Loper's counsel objected to the admission of this evidence, arguing that Loper had not been convicted of the burglary offense and the record thereof had been expunged, that the misdemeanor convictions were not offenses that involved dishonesty or a false statement, and that these matters were not shown to disqualify him from being a corrections officer under section 943.13, Florida Statutes.
The trial court overruled Loper's objections and directed him to answer Allstate's questions for the "limited purpose of you being gainfully employed as a corrections officer." Consequently, Loper testified that in 1977 he was charged with burglary of a business, and that he had been charged four times and convicted three times of driving while intoxicated. His drivers' license had been revoked for life, but he had partially completed a program designed to help him re-obtain his license. He further testified that he had "a number of convictions for disturbing the peace, public intoxication and prowling." The trial court also admitted in evidence an employment application on which Loper admitted that he had pleaded nolo contendere to the burglary charge in 1977.
We hold it was error for the trial court to overrule Loper's objections and admit this evidence. The criminal history was not shown to disqualify Loper from prospective employment as a corrections officer, and the prejudicial effect of such evidence far outweighed any possible probative value it might have had. This issue is governed by Section 943.13, Florida Statutes (1991). That section provides in part pertinent to this issue that a person employed as a corrections officer shall:
(4) Not have been convicted of any felony or of a misdemeanor involving perjury or a false statement, or have received a dishonorable discharge from any of the Armed Forces of the United States. Any person who, after July 1, 1981, pleads guilty or nolo contendere to or is found guilty of any felony or of a misdemeanor involving perjury or a false statement is not eligible for employment or appointment as an officer, notwithstanding suspension of sentence or withholding of adjudication.
* * * * * *
(7) Have a good moral character as determined by a background investigation under procedures established by the commission.
Loper's plea to the felony charge for burglary occurred in 1977, several years prior to the 1981 date specified in the statute, so it was not mandatorily disqualifying under subparagraph (4) as it would have been had the plea occurred after July 1, 1981. Cf. McNair v. Criminal Justice Standards and Training Com'n, 518 So.2d 390 (Fla. 1st DCA 1987). Likewise, none of his misdemeanors were disqualifying under subparagraph (4) because they did not involve perjury or false statements. For these reasons, Allstate was left to argue that the evidence of past criminal history was nevertheless relevant to Loper's good moral character under subparagraph (7) of section 943.13. Nothing in this subparagraph makes Loper's criminal record a mandatory disqualification as does subparagraph (4); rather, subparagraph (7) reposes discretion in the agency to determine good moral character. Allstate, however, did not present any evidence that the Department of Corrections would likely treat Loper's criminal record as reflecting bad moral character under section 943.13(7) so as to disqualify him from employment. Loper, on the *1058 other hand, presented evidence that he was both qualified and employable as a corrections officer, but for the injuries received in the accident. Accordingly, on this record, what negative effect Loper's criminal history might have on his prospects for employment as a corrections officer was wholly speculative, leaving his criminal record of limited probative value, because the jury was not presented any evidence from which it could determine to what extent, if any at all, this criminal history would influence the agency's discretionary decision regarding employment under section 943.13(7). Evidence of the commission of criminal offenses by a litigant or a witness has long been recognized to be highly prejudicial and thus inadmissible "if its probative value is substantially outweighed by the danger of unfair prejudice." Section 90.403, Fla. Stat. (1991). The prejudicial effect of Loper's criminal history, considered in light of its limited probative value, requires reversal and remand for a new trial on the issue of damages.[1]

II.
Next, Loper complains about the admission of certain testimony by Dr. Surgnier, an orthopedic surgeon who first evaluated Loper's right knee two months after the subject accident. The doctor testified by deposition that Loper gave him a history of right knee pain, presumably secondary to his previous occupation as a tilesetter, and that Loper complained of limited motion in the knee and increasing right knee pain after the accident. Dr. Surgnier found some evidence of pre-existing arthritis in the knee, and some calcifications that indicated a more chronic problem; but he could not determine whether the calcifications were a result of the accident or whether they pre-existed the accident. Dr. Surgnier performed arthroscopic surgery on Loper's knee, and this procedure revealed the presence of ligament damage which, he opined, indicated the occurrence of an acute injury to the knee that could not have been caused by the pre-existing arthritis but was caused, based on the history given him, by the automobile accident. Dr. Surgnier further stated that cartilage damage could have resulted from both that injury and arthritic changes.
Allstate was allowed to present Dr. Surgnier's testimony on cross-examination, over Loper's objection that the testimony constituted double hearsay not admissible under any of the exceptions to the hearsay rule, that Loper had told him about a physician he had seen prior to the accident who had suggested that Loper undergo a "maquet procedure."[2] Dr. Surgnier explained:
I guess probably here in America we think of [the maquet procedure] more as a salvage type procedure. It's not something you do as a first line type operation. It's a reserve for more severe type problems. Perhaps I was a little surprised it was suggested, but I didn't know him before.
Dr. Surgnier stated that the doctor who suggested the surgery was "certainly thinking about some patellar arthritis," but further explained that the suggestion of a maquet procedure "may have just come up in the discussion sometime because I would be surprised if a physician would represent a maquet procedure. I would just be very surprised."
Allstate offered this out-of-court-statement that the prior physician made to Loper as proof that Loper's knee was so badly damaged prior to the accident that he needed what Dr. Surgnier described as a salvage-type operation reserved for serious knee damage. Unquestionably, this testimony was hearsay. Section 90.801, Fla. Stat. (1991). Allstate argues, however, that this testimony was admissible as an exception to the hearsay rule pursuant to section 90.803(4), Florida Statutes (1991), because this information was furnished by Loper to Dr. Surgnier for the purpose of medical diagnosis or treatment. Section *1059 90.803(4) provides an exception to the hearsay rule for statements made for purposes of medical diagnosis or treatment, but the exception extends only "insofar as reasonably pertinent to the diagnosis or treatment." Thus, as a predicate to admission of this testimony under section 90.803(4), Allstate was required to show that Dr. Surgnier considered the statement to be relevant to his diagnosis and treatment. See Saul v. John D. and Catherine T. MacArthur Foundation, 499 So.2d 917 (Fla. 4th DCA 1986); Charles W. Ehrhardt, Florida Evidence § 803.4 (1992 ed.). In determining whether statements are shown to be relevant to diagnosis or treatment, the court must examine each case on its own facts, and in making such a judgment much depends on the treating physician's own analysis. Saul, 499 So.2d at 919.
In this case, Dr. Surgnier's testimony does not demonstrate that he considered the suggestion of a maquet procedure relevant to his diagnosis or treatment of Loper's injury. In fact, he went so far as to state that he "would just be very surprised" if a doctor had actually suggested such a procedure to Loper. Since Allstate failed to lay the necessary foundation for admission of this testimony under section 90.803(4), the trial court erred in admitting it. While this ruling of the trial court, standing alone, would not necessarily require reversal, we point it out to avoid needless repetition on retrial.

III.
Loper contends that the trial court erred in granting Allstate's motion for relief from judgment on grounds that the jury was obviously confused by the form of Loper's medical bills exhibit, and that this confusion resulted in an award for medical expenses that Allstate had previously paid. The record shows that the exhibit listing Loper's medical expenses was admitted into evidence without objection, and no contrary evidence was offered by Allstate. The list was separated into four columns entitled, "Provider," "Expenses To Date," "Amount Paid to Date," and "Balance Due." During closing argument, Loper's counsel advised the jury to award only the amount stated in the "Balance Due" column. Allstate's counsel told the jury during closing argument that if they found Loper to be a "resident relative" (and thus insured under the policy in question), they should award only the outstanding medical bills. The jury verdict awarded Loper $30,000 "for medical expenses and lost earnings or earning ability in the past,"[3] future damages for medical expenses and lost earning ability in the amount of $2,500 for 2 years, for a total of $5,000, past intangible damages of $15,000, and future intangible damages of $15,000. The total amount of damages assessed by the jury was $65,000.
Allstate filed a motion for a new trial and remittitur, arguing in part that the verdict made it clear that the jury intended to award Loper $28,388.14 in past medical bills even though the balance due for such medical bills was only $18,355.72, as shown by the list of expenses in evidence. Allstate argued that the jury believed that Loper, rather than Allstate, had paid $9,823.22 of his medical bills. Without ruling on this motion, the trial court entered judgment awarding damages in the amount of $65,000. Allstate then filed a motion for relief from judgment, asserting that the court had signed the final judgment "before the Court had ruled upon Defendant's Motion for Remittitur based on the lack of evidentiary support for the amount of past medical expenses awarded to the Plaintiff." Allstate repeated its argument that the jury was obviously confused by the medical expenses form and mistakenly determined damages for past medical expenses to equal the total medical expenses rather than the balance due. Granting this motion, the trial court entered an amended final judgment reducing the damage award by $12,000 ($9,823.22 already paid by Allstate from PIP coverage, and $2,254.78 remaining to be paid from PIP coverage and medical expenses coverage).
*1060 The reduction of the jury's damages award in the amended final judgment was error. While the list of medical expenses that Loper submitted does not indicate that Allstate had already paid part of the medical expenses, it does list expenses already paid and shows a balance due on each of the expenses and a total balance due. During closing argument, Loper's counsel asked the jury to award only the amount stated in the "balance due" column. Not only did Allstate fail to object to the medical expenses in the form submitted in evidence, it referred to that exhibit in closing argument, expressly asking the jury to award Loper only the outstanding medical bills. The jury verdict awarded a single sum for medical expenses and lost earnings or lost earning capacity. It is not possible for the trial court, or this court, to determine what portion of the $30,000 award was intended for medical expenses, and what portion was intended for past lost earnings. Therefore, the trial court erred in reducing the amount of damages for medical expenses on the assumption that $12,000 of this damage assessment by the jury was attributable solely to medical expenses.

IV.
Loper's final three issues concern the award of attorney's fees. Prior to entry of the amended final judgment, the court held a hearing on Loper's motion to assess attorney's fees. At the hearing, Loper presented evidence that his attorney had expended 336 hours on the case since the insurance coverage issue was raised by Allstate. Two expert witnesses testified that this number of hours was reasonable, that an hourly rate of $150 was appropriate, and that the application of a multiplier was appropriate due to the contingent nature of the fee. Loper also presented evidence that a legal assistant had expended 18.2 hours on the case, that this time was reasonable, and that $35 per hour was a reasonable hourly rate. Allstate did not offer contradictory evidence on these issues. The amended final judgment ruled that Loper was entitled to attorney's fees related only to the coverage issue, that a reasonable time for litigating the coverage issue was 125 hours, and that $100 was a reasonable hourly rate for litigating the coverage issue. The court, without explanation, did not apply a multiplier and did not award any fee for the legal assistant's time.

A.
Loper first argues that the trial court erred in failing to award a reasonable attorney's fee for all of the 336 hours of time expended subsequent to Allstate's raising the coverage issue. He contends that Allstate never conceded the coverage issue, that the coverage dispute permeated the entire litigation, and that the trial court should have considered all the time his attorneys expended after that issue was raised. He further argues that even if the law required the court to determine the time spent only on the coverage issue and award fees based only on that time, the court's finding on the time spent on that issue was totally arbitrary.
The trial court correctly determined that attorneys' fees were awardable only on the coverage issue. See Moore v. Allstate, 570 So.2d 291 (Fla. 1990), wherein the supreme court held that section 627.727(8) limits the fee awardable under section 627.428(1) to the issue of coverage, explaining that the uninsured motorist provisions of section 627.727 were intended to place the injured party in the same position as he would have been had the tortfeasors been insured, and that 627.727(8) accomplishes this purpose by directing that the insurer pay attorney's fees only for the coverage issue when the insured prevails. However, the trial court erred in finding that 125 hours was a reasonable amount of time attributable to the coverage issue. This finding is not supported by any record evidence and the judge offered no explanation as to how he arrived at this figure. See Thunderbird, Ltd. v. Great American Ins. Co., 566 So.2d 1296, 1304 (Fla. 1st DCA 1990) (Where deduction in attorney's fee award apparently was arbitrarily made and no basis for the deduction was cited by the court in its *1061 order, appellate court was required to reverse and remand for further proceedings).

B.
Loper next argues that the trial court erred in failing to consider the application of a multiplier in determining the amount of a reasonable attorney's fees due to the contingent nature of the fee in this case. In Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985), the supreme court held that a trial court's ruling on attorney's fees must contain specific findings of fact as to the reasonable number of hours expended, the normal hourly rate, and the appropriateness of increasing or decreasing this lodestar. These requirements are mandatory and the failure to make the requisite findings constitutes reversible error. Jones v. Associates Finance Inc., 565 So.2d 394 (Fla. 1st DCA 1990).
In this case, Loper submitted an attorney's affidavit which expressed the opinion that it was unlikely that Loper would be successful in the prosecution of the case, and, therefore, under Standard Guaranty Ins. Co. v. Quanstrom, 555 So.2d 828 (Fla. 1990), a multiplier of 2.5 would be justified. Allstate did not present any evidence disputing the opinions stated in this affidavit. Despite this undisputed evidence, and contrary to the Rowe requirement that the trial court make a specific finding of fact on the appropriateness of increasing or decreasing the lodestar, the trial court failed to do so. This also was error.

C.
Finally, Loper argues that the trial court erred in failing to consider the time the legal assistant expended on the case. Section 57.104, Florida Statutes (1989), states in pertinent part:
In any action in which attorneys' fees are to be determined or awarded by the court, the court shall consider, among other things, time and labor of any legal assistants who contributed nonclerical, meaningful legal support to the matter involved and who are working under the supervision of an attorney.
(Emphasis added.) Loper submitted an affidavit and itemized list of services from a certified legal assistant stating that she had performed 18.20 hours of legal assistant work on the case while working under the direct supervision of Loper's attorney. Loper also submitted an affidavit of an attorney who stated that a reasonable hourly fee for the work of the legal assistant would be $35.00 per hour. Allstate did not present any evidence to dispute these affidavits. In apparent disregard of the mandatory language in section 57.104, the trial court entered an amended final judgment that failed to reflect any consideration of the legal assistant's time. This error must also be corrected on remand.
The amended final judgment is affirmed as to Allstate's liability to Loper under its insurance policy. The damages award and attorney's fees award are reversed, and this cause is remanded for a new trial on damages only and for a redetermination of the reasonable attorney's fees due the appellant for litigating the coverage issue.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
ERVIN and WIGGINTON, JJ., concur.
NOTES
[1] Because Allstate did not raise and demonstrate any error in regard to the issues of coverage or liability for damages, those issues need not be retried.
[2] Dr. Surgnier described a "maquet procedure" as a surgical operation designed to change the position of the kneecap to relieve kneecap pain.
[3] The verdict form did not instruct the jury to separate the damages for medical expenses from damages for lost earnings or earning ability.