619 So.2d 435 (1993)
John MARTIN, Petitioner,
v.
LAIDLAW TREE SERVICE, INC., a corporation, Respondent.
No. 93-00009.
District Court of Appeal of Florida, Second District.
June 4, 1993.
*436 Susan W. Fox of Macfarlane Ferguson, Tampa, and H. Guy Smith of H. Guy Smith, P.A., Lakeland, for petitioner.
D. Lee Pitisci of Law Office of Medina & Pitisci, Tampa, for respondent.
PER CURIAM.
John Martin seeks certiorari review of a circuit court order granting the motion to dismiss of Laidlaw Tree Service, Inc., (hereinafter referred to as "Laidlaw"), which specifically requires Martin to pay the sum of $7,164.00 to Laidlaw prior to the filing of an amended complaint. We grant the petition and reverse the order because the circuit court abused its discretion by imposing the sanction of dismissal and did not make specific written findings to support the dismissal as required by law.
A complete rendition of the facts in this case is necessary to understand this court's holding in this matter: On November 10, 1989, Martin was injured while mowing his lawn when he was struck on the head by tree limbs being cut by Laidlaw. Subsequently, Martin developed the following symptoms: speech impediment, personality disorders (paranoid personality and organic personality disorder), insomnia, difficulty concentrating, loss of physical dexterity, amnesia concerning events surrounding the accident, and short-term memory deficits. Martin instituted litigation on April 15, 1990, to recover damages from Laidlaw due to its actions in causing his injuries.
On January 28, 1991, pursuant to a request by Laidlaw, Martin appeared at the offices of S.W. Lipinski, M.D. for an evaluation following his injury. The events *437 which occurred in the doctor's office are in dispute. The doctor reports that he was unable to obtain Martin's cooperation in conducting the evaluation and notes that Martin had "absolutely no memory." Martin indicates that he did submit to the examination, but contends that Dr. Lipinski was verbally abusive and twisted and pulled his legs causing him extreme pain. Shortly thereafter, Dr. Lipinski allegedly told him he could not examine him. Later that same evening, Martin was admitted to a hospital emergency room complaining of pains resulting from the exam.
Dr. Lipinski describes Martin as "one of the most hostile men I have run across" and indicates that after the evaluation, Martin pulled out all the papers from the office filing cabinet and threw them about the room. In the doctor's opinion, Martin was in need of "some psychiatric care."
On March 19, 1991, Martin was examined by Victoria Tagala, M.D. after referral by the Florida Department of Health and Rehabilitation Services for a disability evaluation. Dr. Tagala also examined Martin on three subsequent occasions and found Martin to be confused and having difficulty in comprehension as well as having physical difficulties directly related to the accident in question, including: headaches, insomnia, irritability, confusion, memory loss, ringing in the ears, blurred vision. Dr. Tagala notes that Martin was tense and irritable when she examined him, contradicted her recommendations, and angered easily. On his last visit with Dr. Tagala on May 14, 1991, Martin became loud and angry and did not return for any follow-up care.
Martin was evaluated by Dr. C.P. Weller, a psychiatrist on September 24, 1991, who indicates that he manifested symptoms of prominent paranoid attitudes, a tendency to interpret comments or statements in a negative manner, possible sleep disorder, irritability, periodic outbursts, memory problems, psychomotor difficulties and speech impairment. Dr. Weller recommended the neuropsychological evaluation which was conducted on October 10 and 18, 1991, by neuropsychologist Paul Mintz, Ph.D. In his report, Dr. Mintz reported that Martin was experiencing serious defects in cognition and severe emotional and behavioral problems which are a result of the accident in question.
All the doctors who have examined Martin are in agreement that he is suffering from severe psychological and behavioral problems. These observations should be considered when evaluating the actions of Martin during the course of this litigation.
Complications started in the litigation of this matter when Laidlaw scheduled two Independent Medical Examinations (IME) in Hillsborough and Pinellas Counties in January and February 1992. Martin's first attorney objected to conducting the IMEs outside Polk County, the county of Martin's residence, due to Martin's transportation problems. Laidlaw responded with a motion to compel attendance at the IMEs, but indicated in an amended motion that "if necessary" Laidlaw would pay for reasonable travel arrangements. The motion to compel was granted on the same day one of the out-of-county IMEs was scheduled. Allegedly, Martin did not attend the IME due to his continued transportation problems.
Immediately after the entry of the order, Martin filed a motion for clarification to request that the order granting the motion to compel include a provision that Laidlaw shall provide transportation for Martin to the out-of-county IMEs. A letter written by Martin to the court explaining his transportation problems and his willingness to attend the IMEs was filed with the court prior to the entry of the court's order denying the motion for clarification.
Martin terminated the employment of his first attorney on or about February 7, 1992. Prior to the notice of appearance being filed by his second attorney, Martin did not attend a second out-of-county IME scheduled for February 24, 1992. The order approving substitution of counsel was not entered until March 23, 1992. Thereafter, the first motion to dismiss and motion for sanctions was filed by Laidlaw which alleges that Martin was uncooperative and had failed to attend the two out-of-county IMEs.
*438 On May 1, 1992, the trial court entered an order denying motion to dismiss and granting motion for sanctions. This order imposed the sanction of payment of all attorney's fees, costs, physician's expenses, and other expenses related to obtaining the requested discovery. Laidlaw's attorney was instructed to provide the court with an affidavit which set forth these costs, fees, and expenses. On May 7, 1992, Laidlaw filed a motion to determine attorney's fees and costs with a supporting affidavit. The record presented to this court does not indicate that this matter was set for hearing or that a hearing was conducted at any time.
On September 16, 1992, Martin's second attorney filed a motion to withdraw as counsel. There is no indication of record that Laidlaw expressed any objection to the withdrawal of Martin's second attorney. On the same day that the motion to withdraw was filed, Laidlaw filed its motion to dismiss with prejudice which is the subject of this writ of certiorari.
The motion to dismiss with prejudice specifically informs the court that the trial of the matter which had been set for September 8, 1992, had been rescheduled to January 11, 1993, due to Martin's second attorney's heavy trial schedule. Laidlaw argues that due to the withdrawal of Martin's second attorney, the trial would have to be rescheduled once again and the previously set depositions and IMEs would have to be rescheduled.
The motion to withdraw was granted by the trial court on September 23, 1992, and Martin was given thirty days to retain new counsel. Immediately thereafter, Laidlaw filed a notice of hearing for the motion to dismiss with prejudice which was subsequently cancelled.
Martin's third attorney filed a notice of appearance on October 21, 1992, and was informed that a hearing on the motion to dismiss with prejudice was scheduled for October 28, 1992. When Laidlaw would not agree to the postponement of the hearing, Martin filed a motion for continuance which was granted by the court.
A response to defendant's motion to dismiss and motion to lift sanctions was filed by Martin on November 10, 1992. The hearing on the motion to dismiss with prejudice was held on November 24, 1992. The court granted the motion without prejudice, and ordered that prior to filing an amended complaint, Martin was to pay the sum of $7,164.00; the total sum indicated in the affidavit of Laidlaw's attorney in support of the motion to determine attorney's fees and costs. Martin filed a timely petition for writ of certiorari which is the subject of this opinion.
The trial court dismissed Martin's complaint for discovery abuses. Sanctions for such abuses are governed by Florida Rule of Civil Procedure 1.380(b). The standard of review for the imposition of sanctions under the rule is whether there was an abuse of discretion by the trial court. If reasonable persons could differ as to the propriety of the action taken, there can be no finding of an abuse of discretion. Commonwealth Fed. Sav. and Loan v. Tubero, 569 So.2d 1271 (Fla. 1990). We are very cognizant of the fact that the trial court must have the authority to manage its case load and to impose sanctions when necessary; however, the sanction of dismissal of a party's action is a drastic remedy which should be used only in extreme situations. Momenah v. Ammache, 616 So.2d 121 (Fla. 2d DCA 1993). The severity of the sanction must be commensurate with the violation and each case must be evaluated on its own facts. Ferrante v. Waters, 383 So.2d 749, 750-51 (Fla. 4th DCA 1980).
In its order, the trial court did not make an express written finding that the actions of Martin constitute a willful or deliberate refusal to obey a court order to comply with discovery. Laidlaw argues that if it was error for the court to omit a finding in its order, such error was harmless. We note that Laidlaw does not allege that the actions of Martin in not attending the scheduled IMEs, which were the basis of its first motion to dismiss, and in hiring a new attorney were intentional acts which constitute the extreme circumstances necessary *439 to impose the strict sanction of dismissal.
The supreme court has recently instructed the courts concerning the necessary contents of an order imposing the sanction of dismissal. In Commonwealth Fed. Sav. and Loan v. Tubero the court specifically held that due to the fact that the trial court is granted so much discretion in imposing sanctions, the order itself must contain an explicit finding of willful noncompliance by the offending party. Id., 569 So.2d at 1273. In order to sustain the dismissal of an action for discovery abuses, the courts have indicated that the conduct of the offending party must "reflect bad faith, willful disregard, gross indifference, deliberate callousness, or a deliberate and contumacious disregard of the court's authority." Belflower v. Cushman & Wakefield of Florida, Inc., 510 So.2d 1130, 1131 (Fla. 2d DCA 1987); see Wallraff v. T.G.I. Friday's, Inc., 490 So.2d 50, 51 (Fla. 1986); Ferrante, 383 So.2d at 751. In absence of some demonstration that the appellee has been prejudiced due to appellant's defaults, this court is reluctant to affirm such a severe sanction as dismissal. See Bieling v. E.F. Hutton & Co., 522 So.2d 878 (Fla. 2d DCA), rev. denied, 531 So.2d 1352 (Fla. 1988).
In the present case, we hold that the trial court abused its discretion by imposing the sanction of dismissal, as reasonable minds could differ as to the propriety of such an action because, based on the record presented to this court, it does not appear that the actions of Martin were done in willful disregard of the court's authority and because Laidlaw has failed to show prejudice.
The thrust of Laidlaw's argument in the motion to dismiss with prejudice is that the trial would have to be delayed and depositions and IMEs would have to be rescheduled due to the fact that Martin had employed a new attorney. These allegations were disputed by Martin's third attorney in his written response to the motion and at the hearing on the motion for continuance at which time he stated that he would not delay the trial beyond the January 1993 trial date. Further, the record does not indicate that there had been any requests to reschedule depositions or IMEs by Martin's new counsel.
We note that when Martin's second attorney filed his motion to withdraw, no objection appears of record. However, Laidlaw immediately filed the subject motion to dismiss with prejudice which complained that the withdrawal of the attorney was an example of Martin's continued attempts to avoid the IMEs and failure to cooperate in the pending litigation. In a civil action the attorney of record has the absolute right to terminate the attorney-client relationship and to withdraw as attorney of record, unless granting such a request would interfere with the efficient and proper functioning of the court. Fisher v. State, 248 So.2d 479, 486 (Fla. 1971). Laidlaw's concerns regarding the timing of the trial and the discovery timetable should have been presented in the form of an objection to the withdrawal of Martin's second attorney rather than through a motion to dismiss with prejudice.
Addressing the issue of the trial court's finding that Martin is to pay the sum of $7,164.00 to Laidlaw before being allowed to file an amended complaint, the record presented to this court does not indicate that a hearing was held on the motion to determine attorneys' fees and costs subsequent to the trial court's imposition of sanctions against Martin on May 1, 1992.
At the hearing on the motion to dismiss with prejudice, the trial court states that it had already determined that Laidlaw had expended approximately $7,000.00 in attorney's fees and costs, however, there is no evidence in the record that a hearing was conducted to determine the sums due to Laidlaw pursuant to the order granting sanctions. This court notes that at the hearing on the motion to dismiss with prejudice, Laidlaw's attorney acknowledges that the court had previously indicated that the issue of the amount due under the sanction would be determined after the trial or after a potential settlement of the case.
*440 Before the trial court orders Martin to pay the sanctions imposed, he should be given the opportunity to have a hearing to review the affidavit of Laidlaw to determine if those fees and expenses are appropriate under section 57.104, Florida Statutes (1991), the Statewide Uniform Guidelines For Taxation of Costs In Civil Actions, and are fees and expenses related to obtaining the discovery which was the basis of the imposition of sanctions by the trial court. See generally Loper v. Allstate Ins. Co., 616 So.2d 1055, 1061 (Fla. 1st DCA 1992); Wright v. Wright, 577 So.2d 1355 (Fla. 1st DCA 1991).
Accordingly, we grant the petition for writ of certiorari, quash the order of the circuit court under review, and remand for further proceedings consistent with this opinion.
CAMPBELL, A.C.J., and THREADGILL and BLUE, JJ., concur.