661 So.2d 1227 (1995)
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant,
v.
James Lynch, Appellee.
No. 93-1145.
District Court of Appeal of Florida, Third District.
September 27, 1995.
Rehearing Denied November 15, 1995.
*1228 Walton, Lantaff, Schroeder & Carson and Geoffrey B. Marks, Miami, for appellant.
Caruso, Burlington, Bohn & Compiani, Theodore Fournaris and Edna L. Caruso, Palm Beach, for appellee.
Before NESBITT, JORGENSON and GODERICH, JJ.
GODERICH, Judge.
The defendant, State Farm Mutual Automobile Insurance Company [State Farm], appeals from the final judgment, final cost judgment, and amended final judgment. The plaintiff, James Lynch, cross-appeals from these same judgments. We affirm, in part, and reverse, in part.
The plaintiff was involved in an automobile accident with a car operated by Mark Sokolowicz, leased by John Sokolowicz, and owned by Southeast Bank Leasing Company. The plaintiff filed a complaint alleging that the automobile had been operated in a negligent manner. In the second amended complaint, the plaintiff also stated a claim against State Farm, his own uninsured/underinsured motorist carrier.
State Farm had issued three separate policies to the plaintiff covering three separate vehicles. These policies were applied for through a State Farm agent in Montana. The plaintiff, an attorney, maintains a summer residence in Montana but works in Florida. He submitted separate premium payments for each of the policies. Prior to trial, State Farm filed a motion for partial summary judgment asking the court to rule that, pursuant to Montana law, the $100,000 coverage in each of the three policies should not be stacked. The trial court granted State Farm's motion thereby limiting the uninsured/underinsured motorist coverage to $100,000, rather than stacking them for a total of $300,000.
At trial, State Farm argued that the accident occurred when Mark Sokolowicz attempted to avoid a jogger and moved to have the jogger, an unnamed party, placed on the *1229 verdict form in order to apportion fault. The trial court denied this request. The trial court, however, did allow State Farm to argue to the jury that the accident was the jogger's fault.
The issue of whether the plaintiff had sustained a permanent injury was disputed at trial. The trial court instructed the jury that if it found that the plaintiff did not suffer a permanent injury, it could not award damages for future medicals or future loss of income. The jury found that the plaintiff did not suffer a permanent injury and returned a verdict awarding the plaintiff $40,000 in past medicals and $136,924 in lost wages.
State Farm moved for a $100,000 set-off since the plaintiff had settled with the Sokolowiczes and their insurer for $100,000. The plaintiff opposed the set-off arguing that the release did not include economic damages. The trial court ruled that State Farm was not entitled to a set-off of the $100,000 settlement. State Farm also moved to set-off $45,000 from the plaintiff's past lost wages award since the plaintiff received $45,000 under a Disability Overhead Expense Policy. The trial court granted the motion as to past lost wages and allowed a $45,000 set-off. The parties also agreed to a $17,000 set-off from the $40,000 award for past medicals for PIP benefits that had been previously awarded to the plaintiff. The trial court entered an amended final judgment awarding the plaintiff a total of $114,924.00. This appeal follows.
The parties have raised numerous issues on appeal and cross-appeal. We address only those that have merit.
First, pursuant to Fabre v. Marin, 623 So.2d 1182 (Fla. 1993), the trial court erred in not allowing the jury to apportion liability between the tortfeasor driver and a nonparty, the jogger. In the instant case, there was sufficient evidence to permit the jury to consider the liability of the nonparty. Accordingly, this matter is reversed and remanded for a new trial.
State Farm also contends that the trial court erred in not granting it a $100,000 set-off where the Sokolowiczes and their insurer had settled with the plaintiff for $100,000. Here, the plaintiff argues that the release did not release the Sokolowiczes of any claim for economic damages, and therefore, State Farm is not entitled to the $100,000 set-off. State Farm, on the other hand, argues that the release is a complete release of all claims that the plaintiff had or could have against the Sokolowiczes and their insurer. We agree with State Farm.
The release provides, in pertinent part, as follows:
This is a release of any and all claims ... and includes any and all claims for personal injury, property damage, medical and/or hospital bills, liens of any kind and/or nature, including claims for loss of services, attorney's fees and/or costs.
The trial court found that the portion of the release that stated that "any and all claims" were being released, conflicted with the portion of the release that specifically listed what items of damages were being released. We find that there is no conflict. The language of the release which provides "and includes ..." does not limit the release to those items of damages that were specifically listed. It clearly indicates that "any and all claims" are being released, and that such claims include, but are not limited to, those items that are specifically listed. Contrary to the plaintiff's contention, we find that the release is a complete release of all claims, including lost wages and past medicals. The trial court erred in failing to award a $100,000 set-off.
Next, on cross-appeal, the plaintiff contends that the trial court erred in instructing the jury that if it found that the plaintiff had not sustained a permanent injury, it could not award damages for future medicals or future loss of income. We agree.
At the time of trial, the trial court did not have the benefit of Auto-Owners Insurance Co. v. Tompkins, 651 So.2d 89 (Fla. 1995). In Auto-Owners, the Florida Supreme Court held that "in order to recover future economic damages, a claimant must establish only that the future economic damages are reasonably certain to occur. While proving a permanent injury can be an important factor in establishing that such damages are reasonably *1230 certain to occur, it is not an absolute prerequisite." Therefore, in light of Auto-Owners, we find plaintiff's contention is correct and that the Judge erred in instructing the jury on this point.
The plaintiff also contends on cross-appeal that the trial court erred in ruling that, under Montana law, the plaintiff's uninsured/underinsured motorist coverage from his three separate policies was not stackable. We agree. At oral argument, counsel for State Farm conceded that under the circumstances of this case, stacking is permitted under Montana law. See Bennett v. State Farm Mut. Auto. Ins. Co., 261 Mont. 386, 862 P.2d 1146 (1993).
Next, the plaintiff also contends on cross-appeal that if this court finds that he should have prevailed on the stacking issue, which we did, he should be awarded attorney's fees under section 627.428, Florida Statutes (1989).
The plaintiff paid State Farm for three separate policies that provided $100,000 in uninsured/underinsured motorist coverage for each policy. State Farm argued throughout this litigation that under Montana law, these policies could not be stacked, and therefore, the plaintiff was only entitled to $100,000 in coverage. By doing so, State Farm in effect denied coverage under two of the plaintiff's three policies. Accordingly, we find that the plaintiff is entitled to attorney's fees pursuant to section 627.428, Florida Statutes (1989). See Moore v. Allstate Ins. Co., 570 So.2d 291 (Fla. 1990); Loper v. Allstate Ins. Co., 616 So.2d 1055 (Fla. 1st DCA 1993).
The plaintiff also contends on cross-appeal that the trial court erred in granting State Farm a set-off for the $45,000 previously paid under the Disability Overhead Expense Policy.
The Disability Overhead Expense Policy provides, in part, that "employee salaries, other than compensation of the insured or his replacement, are covered." In addition, paragraph 1.3 of the policy provides that "covered overhead expense" does not include "salary or other compensation of the insured or a person serving as his replacement." Pursuant to the language of the policy, the $45,000 was to cover the overhead expenses that were normal or customary in the operation of plaintiff's law firm, excluding his salary. As such, the trial court erred in setting off the $45,000 from the plaintiff's award for lost wages since the Disability Overhead Expense Policy did not cover the plaintiff's lost wages.
Lastly, since this cause is being remanded for a new trial, we remind the parties that any testimony regarding the plaintiff's reputation in the community must be in strict compliance with section 90.609, Florida Statutes (1989).
We affirm in part, reverse in part, and remand for a new trial consistent with this opinion.