SUAREZ, J.
 

 AXA Equitable Life Insurance Company (“AXA”) appeals a final summary judgment entered in favor of Appel-lees, Marco Gelpi and Ming Liu, in a
 
 *784
 
 breach of contract action brought by AXA in Miami-Dade County. We reverse. We find that, pursuant to the unambiguous terms of the Separation Agreements in question, Appellees released AXA from any and all suits arising out of their employment, which includes suits that could have been brought in foreign jurisdictions. Appellees, therefore, breached the Separation Agreements by filing suit in Brazil.
 

 Prior to their employment with AXA, Appellees were employed by MONY Life Insurance Company in Brazil. In 2004, MONY merged with AXA, becoming a wholly owned subsidiary and affiliate of AXA. After the merger, Appellees moved to Miami and continued working for MONY, as an affiliate of AXA. AXA closed the MONY Miami office and terminated the Appellees. AXA, including its affiliate MONY, entered into identical Confidential Separation Agreements and General Releases with each of the Appellees. Pursuant to the terms of the Agreements, AXA agreed to pay each Appellee eighty thousand dollars in severance pay and twenty thousand dollars in attorney’s fees in exchange for a general release concerning Appellees’ rights of action against AXA following termination.
 
 [1]
 
 Under the Separation Agreements, AXA (which was the party being released) was defined to include “its current and former parents, subsidiaries and affiliates, including MONY Life
 
 *785
 
 Insurance Company and its subsidiaries and affiliates.”
 

 After entering into the Separation Agreements, the Appellees, who were Brazilian citizens, moved back to Brazil and filed a lawsuit in Brazil against MONY alleging violations of Brazilian law which allegedly arose out of the Appellees’ employment in Brazil and in Miami-Dade County with MONY and AXA. AXA brought the present breach of contract action against the Appellees in Miami-Dade County claiming the Appellees breached the Separation Agreements by filing the Brazilian suit. AXA and the Appellees each filed motions for summary judgment on the issue of whether the plain language of the Agreements demonstrated intent to release Appellees’ claims in the Brazilian lawsuit. The trial court found the Agreements’ language to be ambiguous, did not find a breach of contract, and granted final summary judgment in favor of the Appellees.
 

 We disagree, reverse the trial court’s order and remand with instructions to enter summary judgment in favor of AXA.
 

 We review the interpretation of the Agreements as a question of law under the de novo standard of review.
 
 See Muniz v. Crystal Lake Project, LLC,
 
 947 So.2d 464 (Fla. 3d DCA 2006). We reject the Appel-lees’ contention that the release serves only to release AXA from domestic suits and not suits brought in foreign countries. The Appellees argue that, in paragraph 2(a) of the Agreement, the language of the release, “including but not limited to,” followed by an enumeration of certain causes of action, limits the scope of the General Release to only those enumerated suits and causes of action. Appellees argue paragraph 3 includes the same limiting language. We reject this interpretation. Paragraphs 2 and 3 specifically release and discharge AXA from any and all suits, actions, causes of action, damages and claims in law or equity which Appellees ever had or will have regarding any matter of Appellees’ employment. The language of the release, “including but not limited to,” does not limit the General Release to those causes of action specifically listed. The release clearly shows AXA is released from any and all causes of action arising out of their employment and that the release includes, but is not limited to, just those enumerated causes of action.
 
 See State Farm Mut. Auto. Ins. Co. v. Lynch,
 
 661 So.2d 1227 (Fla. 3d DCA 1995) (holding that the language in a release “and includes ...” does not limit the release to only those damages listed). We find that the clear and unambiguous terms of the Agreements, given their plain meaning, constitute a general release.
 
 See, e.g., Pateo Transp., Inc. v. Estupinan,
 
 917 So.2d 922, 923 (Fla. 1st DCA 2005) (finding that release language requiring employee to release employer from “any and all past, present or future claims, demands, obligations, actions, causes of action, rights, damages, costs, losses of services, expenses and compensation of any nature whatsoever, whether based on a tort, contract or other theory of recovery” was broad enough to encompass workers’ compensation claim);
 
 Bd. of Trs. of Fla. Atl. Univ. v. Bowman,
 
 853 So.2d 507, 509 (Fla. 4th DCA 2003) (finding that language in the general release requiring plaintiff to release defendant from all claims which had accrued, or could have accrued, as of the date of the proposal for settlement, was consistent with a general release and was clear and unambiguous);
 
 Hold v. Manzini,
 
 736 So.2d 138, 141 (Fla. 3d DCA 1999) (finding that release language stating, “[W]hich said first party ever had, now has, or which any personal representative, successor, heir or assign of said first party, hereafter can, shall or may
 
 *786
 
 have against said second party, for, upon or by reason of any matter, cause or thing whatsoever, from the beginning of the world to the day of these presents” was clear and unambiguous in that it required the plaintiff to release the defendant for all claims which had accrued as of the date of its execution).
 

 Pursuant to the general and full releases they executed, the Appellees are barred from bringing any claim or action arising out of their employment against AXA in
 
 any
 
 forum. We find that the Appellees breached their Agreements by bringing suit in Brazil against AXA. Therefore, the trial court erred in granting the motion for summary judgment in favor of Appellees and should have granted AXA’s motion for summary judgment on the breach of contract claim. We reverse and remand with directions to enter final summary judgment, as a matter of law, in favor of AXA.
 

 Reversed and remanded with directions.
 

 [1]
 

 . 2. a. In consideration of the payment described above, and for other good and valuable consideration, Employee hereby releases and forever discharges, and by this instrument releases and forever discharges, AXA Equitable from all debts, obligations, promises, covenants, agreements, contracts, endorsements, bonds, controversies, suits, actions, causes of action, judgments, damages, expenses, claims or demands, in law or in equity, which Employee ever had, now has, or which may arise in the future, regarding any matter arising on or before lire date of Employee's execution of this Agreement, including but not limited to all claims (whether known or unknown) regarding Employee's employment with or termination of employment from AXA Equitable, any contract (express or implied), any claim for equitable relief or recovery of punitive, compensatory, or other damages, or monies, attorneys’ fees, any tort, and all claims for alleged discrimination based upon age, race, color, sex, sexual orientation, marital status, religion, national origin, handicap, disability, or retaliation, including any claim, asserted or unasserted, which could arise under Title VII of the Civil Rights Act of 1964; the Equal Pay Act of 1983; the Age Discrimination in Employment Act of 1967; the Americans With Disabilities Act of 1990; the Civil Rights Act of 1866, 42 U.S.C. § 1981; the Employee Retirement Income Security Act of 1974; the Family and Medical Leave Act of 1993; the Civil Rights Act of 1991; the Worker Adjustment and Retraining Notification Act of 1988; the Sarbanes-Oxley Act; the Florida Civil Human Rights Act of 1992; the Florida AIDS Act Equal Pay Law; the Florida Whistleblower Protection Act; the Florida Wage Discrimination Law; the Florida Sickle Cell Trait Discrimination Law; the Florida Genetic Testing in Employment Law; the Florida Smoking Rights Law; the New York State Human Rights Law; the New York City Human Rights Law; and any other federal, state or local laws, rules or regulations, whether equal employment opportunity laws, rules or regulations or otherwise, or any right under any AXA Equitable retirement, welfare, or AXA Financial stock plans
 

 3. [P]ursuant to and as a part of Employee’s release and discharge of AXA Equitable, as set forth herein, Employee agrees, not inconsistent with EEOC Enforcement Guidance on Non-Waivable Employee Rights Under EEOC-Enforced-Statutes dated April 11, 1997, and to the fullest extent permitted by law, not to sue or file a charge, complaint, grievance or demand for arbitration against AXA Equitable in any forum or assist or otherwise participate willingly or voluntarily in any claim, arbitration, suit, action, investigation or other proceeding of any kind which relates to any matter that involves AXA Equitable, and that occurred up to and including the date of Employee’s execution of this Agreement....